No. 9038.

THE STATE OF LOUISIANA EX REL. RICHARD J. WILLIAMS VS. A. E. LIVAUDAIS, JUDGE OF THE TWENTY-FOURTH JUDICIAL DISTRICT AND R. T. BEAUREGARD, DISTRICT ATTORNEY.

Under that clause of the Federal Constitution giving Congress power to regulate commerce with foreign nations and among the States, it became vested with authority over the subject of the pilotage of vessels in all the ports of the Union.

Congress has, however, never so legislated as to repeal or supersede the laws of this State on the same subject.

Neither the Act of June 1, 1874, nor the regulations of the Secretary of War under it, had such effect.

So, where one holding a license, as pilot, from the United States Local Inspectors of the port of New Orleans, is being prosecuted for an alleged violation of the State law concerning the pilotage of vessels to and from said port of New Orleans, before a State court, the power or jurisdiction of such State court to entertain the prosecution and punish the

State ex rel. Williams vs. Judge.

offender, is not affected or abridged by any law of Congress, or order or regulation of any Federal officer. or by an injunction from a Federal court directed against the parties charged with instigating the prosecution.

# APPLICATION for Prohibition and Certiorari.

*E. H. McCaleb* for the Relator.

1. Congress alone has power to regulate commerce with foreign nations and among the several States (Constitution, Art. 1, Sec. 8). The power to regulate commerce includes the regulation of navigation, and pilot laws are regulations of navigation. 12 How. 299

2. The States can provide rules and regulations on the subject of pilotage only in the absence. of the exercise of that power by Congress and if Congress has acted on the same subject, in so far as the South Pass is concerned, there is no place left for the operation of the State pilot laws over that locality. 2 Wal. 450,

3. The pilot laws of this State have been repealed or superseded by Act of Congress, of June 1, 1874, in so far as Eads Jetties and South Pass are concerned. The interpretation placed upon this act by the Secretary of War, the officer designated "to establish such regulations respecting the use of, or passage through such channel, as he shall deem needful to fully protect the channel and to facilitate the excavation, improvement and use thereof," must be followed and cannot be called in question by the courts. The Reporter, Vol. III, December 29, 1883, p. 228; 11 Wall. 650; 7 Wall. 347.

4. The practical construction given to this Act of Congress, by the Secretary of War, in the regulations issued by him and acted upon by all parties interested, should be considered by the courts in interpreting the statute and, in case of doubt, be deemed conclusive. 21 How. 35; 24 Ill. 27.

5. An act declared lawful by a solemn decree of the United States Circuit Court, cannot be considered and prosecuted as a crime by a district attorney of the State, thereunto authorized by the District Judge—especially where such act arises under and involves the construction of a Federal statute. Judicial comity between the State and Federal courts induce them to respect and defer to the decisions of each other upon matters within their jurisdiction. 33 A. 39; 10 Wheat. 160.

6. The Constitution and laws of the United States are supreme and, to prevent collision between State and National authority, the final decision upon all such questions arising in regard thereto, should rest with the courts of the Union. Cooley's Const. Limitations, p. 12; Wheat. 334-336.

7. Criminal prosecutions cannot be instituted and carried on in a State court in violation of an injunction issued out of a Federal court, especially where defendants in injunction are the prosecuting witnesses. In such case this Court will interfere to prevent a conflict of jurisdiction. 5 R. 29.

8. The Act No. 63, Extra Session of 1877, as well as all the State pilot laws, must be strictly construed, because the former is a criminal statute (Potter's Dwarris, p. 245), and the latter create a monopoly and confer exclusive privileges on the Branch Pilots of this port. Sedgwick's Statutory Construction, p. 293; 3 E. & B., Q. B. 889; 21 Conn. 294-306 ; La. Constitution, Art. 248.

9. Pilots are not public officers. Their avocation is a private profession, trade or calling. R. M. Charlton's R. 310 and 311. In Admiralty a pilot is regarded as a mariner or seaman (Desty's Shipping and Admiralty, § 141), and pilots' fees fixed by State Statutes are recoverable in the Admiralty Courts of the United States. 13 Wal. 236 ; 101 U. S. 520: Lord Tenterden's Treatise on Shipping, Part 2, ch. 5, sec. 1, p. 148 ; 10 Pet. 108.

*James R. Beckwith* for the Respondent.

1. Under the restrictions contained in the fifth sub-division of section 9, article 1, of the Constitution of the United States, and in the present state of Federal legislation, Congress has no power to repeal the pilot laws in force in any State. without the repeal extends to all of the State, harbor, seaport and pilot laws of all the States.

2. The pilot laws of this State are in full force and effect over all of the waters at the mouth of the Mississippi river, in all of the passes, and have not been repealed by any Act of Congress, or by the act or regulations adopted by the War Department of the Government of the United States. either directly or by implication.

3. The pilot laws of this State are in full force and effect, not only in the passes and several mouths of the Mississippi river, but also at sea, over waters adjacent to the coast of the State. off the several mouths of the passes of the Mississippi river; and, under the provisions of Act No. 63, of the Acts of 1877, offenders can be lawfully punished for illegally piloting vessels without being lawfully licensed, even where the offense is committed or commenced within five miles to the seaward from the mouths of the passes. *Wilson vs. McNamee*, 12 *Otto* 572; R. S. sec. 2594-2709.

4. The Act of Congress. approved June 1, 1874, entitled, "*An Act to facilitate the excavation of and to protect certain works of improvement at the mouth of the Mississippi river,*" related to and is, in effect, confined to certain works of excavation at that time being *directly* excavated and carried on by the Government of the United States, by the expenditure of money directly appropriated for that purpose, to be expended under the direct control of officers of the War Department; and not to any works carried on by Eads and his associates, at their risk, to be paid for only in the event of the work being successful; and does not apply to the South Pass, being improved by Eads and his associates.

5. Under the terms of the Act of June 1, 1874, no power was conferred upon the Secretary of War, sufficient to warrant him in taking possession of any territory or waters within the limit of the State, so as to impair the full force and effect of State jurisdiction and laws while so in possession; nor can this be done without the express consent of the State, formally and legally granted.

6. So much of the Act of Congress, approved June 3, 1875, entitled, "*An Act making appropriations for the repair, preservation and completion of certain public works on rivers, harbors and for other purposes,*" as authorizes a contract with Eads and his associates for jetties and improvement of the channel of South Pass, places the work entirely out of the control, direction and interference of the General Government and contemplates only improvements by the *contractor* at his risk. The act does not permit the Secretary of War to assume any control over the waters of that pass; but, on the contrary. prohibits him from attempting any control whatsoever over the navigation of that pass; and does not repeal, alter or change the pilotage laws of the State; and all the pretended regulations relating to South Pass, promulgated by the Secretary of War, are both impertinent interference with the affairs of this State. within its own limits, and are null and void.

7. The Act of this State, approved April 13, 1877, upon which the informations referred to in the petitions of relator are based, is valid and in full force and effect. The Twenty-fourth Judicial District Court, in and for the parish of Plaquemines, has full and competent jurisdiction to try and determine the issues made and punish the offender in the event of conviction.

---

The opinion of the Court was delivered by

TODD, J. The relator was charged, by informations filed in the District Court of the parish of Plaquemines, presided over by the Hon. A. E. Livaudais, with several violations of Section 2 of Act No. 73, of

1877, of the General Assembly of this State, which section reads as follows:

"SECTION 2. *Be it further enacted*, that whoever shall be guilty of acting or attempting to act as pilot to any vessel, inward or outward bound to and from the port of New Orleans, who is not a duly licensed branch pilot, shall suffer fine not exceeding the sum of one hundred dollars, or imprisonment not exceeding two months, or both, at the discretion of the court."

He was arrested under these informations and gave bond for his appearance before the said court.

He has applied to this Court for writs of prohibition and certiorari, directed against the judge of said District Court of Plaquemines and the district attorney for said parish, with a view to arrest said prosecutions and have the proceedings relating thereto declared null and void.

Alternative writs were granted by this Court commanding the judge named to show cause why the relief sought should not be granted, and his answer has been filed within the prescribed time, denying, for reasons which will be more fully noticed hereafter, that the relator is entitled to the writs asked for.

The grounds set forth in the petition, on which relator bases his application are, substantially, these:

He alleges that he holds a license from the United States Local Inspectors of the port of New Orleans, under authority of which, and likewise under the protection of a restraining order issued by the United States Circuit Court at his instance, he was engaged in piloting vessels from the sea and said port of New Orleans, through the Jetties and South Pass, when the said prosecutions were instituted against him for the alleged violation of the State law referred to. That said prosecution was instigated by the Branch Pilots of the port of New Orleans. That the said State law or statute, which he was charged with violating, was inoperative in the South Pass of the river and the Jetties, where relator was acting as pilot at the time of his arrest, for the reason alleged, that the said law or statute was in direct violation of the Act of Congress, approved June 1, 1874. That the said District Judge, Hon. E. A. Livaudais, refuses to be bound by the construction placed upon said Act of Congress by the Secretary of War and the United States Circuit Court.

The respondent judge justifies the proceeding before his court on the following grounds and for the following reasons set forth in his answer:

"1st. Because the Acts of Congress authorizing the States to legislate upon the subject of pilotage within their territories have never been repealed.

"2d. Because the laws of the State of Louisiana, enacted under said authority, have not been repealed or superseded by any Act of Congress, nor by the Act of June 1, 1874, directing the Secretary of War to assume control of the channel at the mouth of the Mississippi river in course of excavation and improvement by the Government.

"3d. Because under the said last mentioned Act of Congress, of June 1, 1874, the authorities delegated to the Secretary of War to establish regulations to protect the channel, etc., are special, should be strictly construed, and cannot be extended by implication and that the powers therein granted do not justify an interference with the pilotage laws of this State.

"4th. Because, in assuming control of said channel at the mouth of the Mississippi river, Congress has in no manner divested the State of jurisdiction over that part of her territory where the said channel and works are situated.

"5th. Because the Circuit Court of the United States has no jurisdiction to enjoin, prevent or impede the execution and enforcement of the Criminal Statutes of this State."

The application for the writs in question, is made under Article 90, of the present State Constitution, clothing this Court with supervisory powers over the proceedings of inferior courts; and the issues raised by the petition of the relator and the answer of the district judge, as above set forth, present a proper case, in our opinion, for the exercise of the powers conferred by that article and we cannot decline to consider them.

I.

For a proper understanding of the subject of this controversy, it is necessary to premise that the pilotage of vessels entering or departing from the port of New Orleans has been regulated by State legislation, which is to be found embodied in the Revised Statutes, from section 2686 to 2706 inclusive, with the amendments thereto, including that of 1877, above quoted, under which the prosecutions complained of by the relator were instituted.

These statutes, in brief, define the qualifications of pilots, provide for their appointment by the Governor of the State, the giving of bond and security by the appointees; prescribe the duties to be performed by them and the extent of their cruising ground or territory, etc.

The important question presented for our solution is, whether the above laws are still in force, or whether they have been abrogated, repealed or superseded by any Act or Acts of the Congress of the United States or other competent Federal authority or their due administration and enforcement inhibited or interfered with by the action or proceeding of the Federal court, mentioned in relator's petition.

To answer this question satisfactorily, it is essential, in the first place, to summarize the several Acts of Congress on the subject of pilotage.

## II.

It may be considered as settled that, under section 8, article 1, of the Constitution of the United States, which vests Congress with power "to regulate commerce with foreign nations and among the several States," that department of the Federal Government had control over the subject of the pilotage of domestic and foreign vessels to and from all the ports of the Union, subject to the restrictions found in section 9 of the same article, which provides that "no preference shall be given by any regulation of commerce or revenue to the ports of one State over those of another."

The inquiry is whether Congress has exercised that right and exercised it in such a manner as to abrogate or impair the force of the State laws on the same subject.

This leads us to review, briefly, the action of Congress upon this question of pilotage and the several acts relating thereto, and some adjudications of the Federal courts bearing on their construction.

1. The first legislation we find is the Act of 1789, passed at the first session of Congress, now section 4235 of the U. S. Revised Statutes, which declares :

"*Until further provision is made by Congress, all pilots in the bays, inlets, rivers, harbors and ports of the United States shall continue to be regulated in conformity with the existing laws of the States respectively wherein such pilots may be, or with such laws as the States may respectively enact for that purpose.*"

This act was construed by the Supreme Court of the United States to be virtually an adoption or recognition by Congress of the State laws regulating pilotage.   Cooley vs. Board Wardens, 12 Howard, 299-312 ; Wilson vs. McNamee, 12 Otto, 572 ; Ex-parte Hager, 14 Otto, 520 ; Ex-parte McNeill, 13 Wall. 236.

2. Next, was the Act of March 2, 1837 (U. S. Statutes 4236), authorizing a vessel entering or departing from a port situated upon waters forming the boundary between two States, to employ a pilot licensed by either State.

3.   Then followed the Act of August 30, 1852, entitled "An Act to amend an act to provide for the better security of the lives of passengers on board of vessels propelled in whole or in part by steam, and for other purposes." It is an act consisting of forty-four sections. It provided for the examination and licensing of pilots by collectors of the port and supervising inspectors of districts. By its terms it applied to and embraced domestic vessels propelled in whole or in part by steam and made it unlawful to employ anyone as pilot on such vessel, unless he held the certificate of the inspector. It repeals all laws inconsistent therewith.

It is unnecessary to recite its provisions more at length. They are very full and voluminous and might seem, at first blush, to be intended to supersede the State laws on the subject of pilotage; but, in the case of Steamship Company vs. Jaliffe, 2 Wall. 450, the Supreme Court of the United States held that the act in question *did not* repeal the State legislation concerning port pilotage, recognized by the Act of 1789, above cited. This decision referred specially to the pilot laws of the State of California, but, it is equally applicable to those of this State, from a similarity in the provisions of the laws of the two States.

The Court, in that decision, declared that: "The clauses respecting pilots in the act (Act 1852) relate, in our judgment, to pilots having *charge of steamers on the voyage* and *not to port pilots;* and the provision that no person shall be employed or serve as a pilot who is not licensed by the inspectors has reference to employment and service on the *voyage generally and not to employment and service in connection with ports and harbors.*"

4.   Subsequently, the Act of February 28, 1871 (U. S. Statutes, sec. 4444), was passed, which, though repealing the Act of 1852, enacted that "*nothing in this act shall be construed to annul* or affect any *regulation established by the laws of any State requiring vessels entering or leaving a port of any such State,* OTHER THAN COASTWISE STEAM VESSELS, *to take a pilot duly licensed or authorized by the laws of such State, or of a State situated upon the waters of such State.*"

5.   We now come down to the Act of Congress of June 1, 1874, which, it is expressly charged in relator's petition, abrogated and repealed the pilotage laws of this State, so far, at least, as relates to the South Pass of the Mississippi river, where, it is alleged, the acts or services of the relator were performed, that gave rise to the prosecutions of which he complains. This act is entitled "An Act to facilitate the execution of and protect certain public works of improvement at the mouth of the Mississippi river," and reads as follows:

"*That from and after the passage of this act the Secretary. of War is directed to assume full control over the particular channel at the mouth of the Mississippi river, in course of excavation or improvement by the Government of the United States, so far as may be necessary to the carrying on and protection of such excavation and improvements and until the same shall be completed; and he may establish such regulations respecting the use of or passage through such channel as he may deem needful to fully protect the channel and to facilitate the excavation, improvement and use thereof. Such regulations shall be promulgated by publication thereof for ten days consecutively, in two daily papers published in New Orleans, Louisiana, and the same may in like manner, be changed from time to time; and any person interfering with, or obstructing, or attempting to obstruct the said improvements, and any person who shall wilfully or negligently strand or sink any boat or craft in said channel, or cause any impairment, injury, filling up or shoaling therein, shall be guilty of a misdemeanor and on conviction thereof, shall be punished by a fine not exceeding five hundred dollars or imprisonment not exceeding six months, or both, at the discretion of the court.*"

The conclusion that anything in the provisions of this act abrogated or superseded the operation of the pilot laws of this State could, in our opinion, only result from a strained construction of its language.

The control that the Secretary of War was authorized or directed by its terms to assume, was obviously and according to the express language of the act, for the sole purpose of carrying out and protecting the excavations and improvements then being made by the General Government in the river, with not one word therein of reference to the pilot laws, either Federal or State, or that would imply that it was intended to modify or in any manner affect them.

Besides, by the very terms of the act, the control over the channel of the river, given thereby, was only to last till the completion of the works; and, according to the admissions and averments in the petition, the improvements mentioned or referred to in the act were completed at the date of the filing of the petition.

Moreover, from the date of the act and the history of its passage and the report made thereon prior to its passage, we do not believe that it had any reference whatever to the South Pass or the Jetties therein, as assumed by the relator's counsel. This is the more evident from the fact that the works and excavations then being done and to be protected, it is stated and not denied, were in the Southwest Pass and the work of constructing the jetties in the South Pass, under what is known as the Eads contract, was not then begun. The act known as.

9

the Jetty Act, which covered this contract with Eads, was not passed till March 3, 1875; and we look in vain for any clause in that act that enlarges or even refers to any control of the channel by the Secretary of War, conferred by the previous Act of 1874.

It was under this Act of 1874, that that officer issued his regulations referred to in the relator's petition and which are relied on as an authoritative construction by him of its meaning, intent and operation and as binding on all courts, Federal and State, and a construction which, it is contended, is absolutely inconsistent with the longer existence of the pilotage laws of this State, so far as relates to the South Pass of the river.

It may well be questioned whether the chief of any of the departments of the Federal Government, at Washington, could so construe an Act of Congress, as to give it the effect of completely destroying a State law, and that his construction is so absolute and conclusive as to deprive a State or Federal court of all power, right or jurisdiction to interpret said act. We are, however, not required, under our view of the case, to decide that question. We cannot reproduce here and embody in this opinion, on account of their great length, the regulations of the Secretary of War referred to, dated September 5, 1881, but we have critically examined them all, as well as previous rules and orders on the same subject by his predecessors, and we do not find, even giving them the broadest scope, that they in any way or in any part conflict, necessarily, with the existence, operation and administration of the State laws on the subject of pilotage.

We do not think they were ever designed to have any such effect, even could that officer have believed that such sweeping powers were delegated to him and could legally be exercised by him under color of the Act of Congress mentioned. The manifest design and purpose of these regulations were for the protection of the improvements in the South Pass, and it may well be doubted whether the Act of 1874, which the officer invokes as his authority, had any reference whatever to the works or improvements intended to be protected by the regulations in question.

The contention of the relator's counsel, that the State laws on this subject have been repealed or superseded to any extent by Federal legislation or Federal authority is, therefore, in our opinion, without merit.

### III.

It is, however, claimed that the enforcement of these State laws, at least as far as relates to this prosecution for their violation, pending before the

District Court of the Parish of Plaquemines, is rendered nugatory and void from the effect of the injunction issued by the United States Circuit Court, heretofore mentioned and set out and relied on in the petition. It is urged that the power of this State court, in view of the restraining order from the Federal court, was completely paralyzed, either to prosecute or punish for any such violation of the State law.

This order or injunction was issued in an equity proceeding, instituted in the United States Circuit Court, by the relator, against a number of persons alleged to be members of an association of Branch Pilots, formed under the laws of this State, to prevent any interference by them or any of them with him, the relator, in the discharge of his duties as a pilot, under the Acts of Congress, known as the "Steam Navigation Acts," and whilst engaged in piloting vessels in the South Pass of said river.

The defendants by the order are enjoined from any such interference or from making any affidavits against him for piloting in said pass.

We cannot perceive how this proceeding in the Federal court can have the slightest effect upon the administration or enforcement of the criminal laws of this State, even with respect to pilotage, in any court of the State.

The injunction is not directed against the respondent judge, nor against the district attorney who filed the informations, nor against any officer of said court. There is nothing, therefore, to impede, limit or restrain the full exercise of the powers and jurisdiction of the court and its officers over all criminal matters which, under the law, may come before them.

If the court is left free and untrammelled by the order in question, the fact alleged that the individuals against whom the injunction from the Federal court is directed, are among the witnesses, whose names are inserted in the information to sustain the prosecutions, is without any legal significance. If these individuals have in any manner violated the injunction, they may be subject to punishment for contempt and become liable to be dealt with by process from the Federal court, but that fact, admitting it to be so, does not in the least affect or impair the powers of the State court for the prosecution of offenses against the laws of the State, or the right of the court to sustain the prosecutions by any evidence within the reach of its process.

Nor can the construction placed by the Federal judge, who issued this order, upon the Acts of Congress, and the regulations of Federal officers, as to their effect upon the State laws, to be inferred from his

action in the premises, control or govern the courts of this State in construing the same.

It is also suggested in the brief of counsel that the pilot laws of the State are in conflict with that article of the Constitution of the State, prohibiting monopolies, but, as we do not find this ground set up in the petition, among those therein urged, we cannot give it consideration.

For the above reasons, we conclude that the relator is not entitled to the relief sought, and it is, therefore, ordered and decreed that the restraining order herein be rescinded and the application for a prohibition be refused, and the proceedings be returned to the lower court at the costs of the relator.